(March 11, 2008)

■ THE PEOPLE OF THE STATE OF NEW YORK, by ELIOT SPITZER, Attorney General of the State of New York, Respondent, v RICHARD A. GRASSO, Appellant, and THE NEW YORK STOCK EXCHANGE, INC., Respondent, et al., Defendant. RICHARD A. GRASSO, Appellant, v THE NEW YORK STOCK EXCHANGE, INC., et al., Respondents. (And a Third-Party Action.) [853 NYS2d 64]—

The underlying action was brought by the Attorney General to challenge compensation and benefits awarded to the former

CEO of the New York Stock Exchange (NYSE), Richard Grasso. A detailed discussion of the background of the litigation and the substance of the complaint is set forth in our decision in *People v Grasso* (42 AD3d 126 [2007]).

In May 2004, when the complaint in this action was filed, it was assigned to Justice Ramos. The case was removed to federal court at Grasso's request in mid-June 2004. The federal court then remanded it back to Justice Ramos on December 9. During a December 15, 2004 conference call, the Attorney General advised the parties and the court that it had a 2002 letter sent by an executive search firm to the NYSE suggesting that Justice Ramos be considered for a position on the NYSE Board of Directors. The next day, Justice Ramos conferred with the parties and their counsel in chambers. Grasso's counsel made it clear that his client had not been involved in employment applications. Counsel for the NYSE advised those present that it had located another letter, sent in October 2003 by the same executive search firm, again suggesting that Justice Ramos be considered for a position on the NYSE Board.* It is undisputed that all of the parties agreed at the meeting that the letters did not provide a basis for the court's recusal.

In April 26, 2006, Justice Ramos proposed holding conferences with each of the parties to explore the possibility of settling the case. On May 2, 2006, the Attorney General sent a letter to the court and the parties stating its position: "We continue to believe that the [c]ourt should proceed with its planned [settlement] meetings with the caveat, however, that *no party later assert that the meetings serve to disqualify the [c]ourt from acting as a fact-finder in this proceeding, or in any way affect the State's right to assert that equitable claims should be decided by the [c]ourt*. With those issues preserved, the meetings should occur as scheduled." (Emphasis added.) The Attorney General reiterated this position in an e-mail sent to the court and the parties on May 4, 2006. Counsel for Grasso responded: "we did not understand the [c]ourt to be setting any pre-conditions to the scheduled meetings. We will be prepared to address any of those issues at our conference."

---

* Both the 2002 and the 2003 letters are authored by a member of the search firm, and directed to the NYSE's CEO (Grasso in 2002, Reed in 2003). Each briefly outlines Justice Ramos's relevant experience. Particularly, the October 2003 letter contains the following paragraph: "Recently Justice Ramos raised a judicial objection to the billing of New York State at a rate of $14,000 per hour by a group of plaintiff attorneys for the Phillip Morris class action tobacco litigation. His objection is based on an ethical guideline dealing with a legal professional's obligation to charge a reasonable fee." The NYSE took no action on either letter, and Justice Ramos was never interviewed by the NYSE.

The court met with third-party defendant H. Carl McCall and his counsel on April 26, 2006, and with Grasso and his counsel on May 10, 2006. One of Grasso's attorneys claims that he spoke privately with the Judge, and expressed his concern that the court would conduct settlement negotiations, decide motions for summary judgment, and if necessary, try the case. Another of Grasso's attorneys recounted that Justice Ramos said "he would reassign the case, depending on 'how far things go' with the settlement discussions." The court similarly recalled stating "as [required,] that if settlement negotiations progressed to the point that it would be improper for this [c]ourt to continue, [it] would reassign the matter."

There were no additional meetings with the court on the issue of settlement, and the parties did not come to any agreement. Between May 2006 and August 2006, the court heard summary judgment motions by defendant Langone and third-party defendant McCall. The court also heard a motion by defendant Grasso to obtain certain discovery from NYSE. On July 31, 2006, Grasso, the Attorney General, and the NYSE all moved for summary judgment.

On August 3, 2006, the Attorney General made a motion to bifurcate the first cause of action and to proceed with a bench trial on that claim. Grasso opposed, contending that all of the claims were subject to trial by jury. His counsel wrote a letter to Justice Ramos asking him to reassign the case "consistent with the commitment made to [Grasso and his counsel] last May." The letter stated: "as one would expect when judges get involved in ex parte settlement negotiations, statements are made that make it inappropriate for the [c]ourt to keep the case for purposes of trial. We do not believe that the [c]ourt—consistent with its commitment to the appearance of fairness and impartiality in a trial of this importance—can now proceed to try the case. It is unthinkable that the [c]ourt would even contemplate sitting as trier of fact." The following day, the court heard arguments on the Attorney General's motion to bifurcate the trial. At the close of arguments, Grasso raised the issue of the court's recusal, and the court invited him to make a formal motion. By order entered August 14, 2006, the court granted the motion for a bifurcated trial insofar as to sever the first cause of action for a nonjury trial. Grasso challenges this order.

Grasso then made a formal motion for reassignment of the case to another justice, which the court denied in a September 14, 2006 order. In its decision, the court stated that it had no interest in the case and had formed no opinion as to the validity of any claim or defense. It also stated that the executive search

firm's actions in circulating his resume to the NYSE were not a basis for disqualification. Finally, the court noted that "nothing of any substance or sensitivity (in the context of recusal) was revealed" in the single settlement conference that the court held with Grasso and his counsel. Defendant Grasso also appeals from this order.

As an initial matter, the order granting plaintiff's motion for a nonjury trial on the first cause of action has been superceded by our decision in *People v Grasso* (42 AD3d 126 [2007], *supra*) in which we dismissed the first cause of action outright. We stated: "The first cause of action, 'for Imposition of a Constructive Trust and Restitution,' relies on the provisions of the N-PCL authorizing the payment of 'reasonable' compensation (N-PCL 202 [a] [12]; 515 [b]) which 'shall be commensurate with services performed' (N-PCL 202 [a] [12]). It alleges that the annual compensation and other benefits Grasso received were neither 'reasonable' nor 'commensurate with the services performed,' and asserts that to the extent these payments were not 'reasonable' and not 'commensurate with the services performed,' they were 'unlawful and *ultra vires* under N-PCL §§ 202 (a) (12) and 515 (b),' they were 'against public policy,' and they 'unjustly enriched' Grasso, and that Grasso 'cannot in equity and good conscience retain such payments.' " (*Id.* at 130.) We then concluded that the Attorney General did not have explicit authority, under the Not-For-Profit Corporation Law, to enforce N-PCL 202 (a) (12) and 515 (b), and we dismissed this claim. As this disposition moots the motion court's August 14, 2006 order, we dismiss the appeal from that ruling (*see Matter of Standley v New York State Div. of Parole*, 40 AD3d 1344 [2007]; *York Holdings v Shafran*, 278 AD2d 77 [2000]).

As to the appeal from the September 14 order, Judiciary Law § 14 governs the disqualification of judges. It provides: "[a] judge shall not sit as such in, or take any part in the decision of, an action, claim, matter, motion or proceeding to which he is a party, or in which he has been attorney or counsel, or in which he is interested, or if he is related by consanguinity or affinity to any party to the controversy within the sixth degree." Here, the parties concede that there are no grounds requiring disqualification as a matter of law under Judiciary Law § 14. However, Grasso contends that Justice Ramos should nonetheless have recused himself.

It is settled that "[a]bsent a legal disqualification under Judiciary Law § 14, a Trial Judge is the sole arbiter of recusal" (*People v Moreno*, 70 NY2d 403, 405 [1987]; *Matter of Alizia McK.*, 25 AD3d 429, 430 [2006]; *Best v Best*, 302 AD2d 295 [2003]).

In addition, the court's decision on a recusal motion will not be disturbed unless it constitutes an abuse of discretion (*see People v Alomar*, 93 NY2d 239, 246 [1999]; *People v Moreno*, 70 NY2d at 405-406).

Defendant Grasso contends that Justice Ramos should have recused himself because of the two letters circulated to the NYSE by the executive search firm in 2002 and 2003 and his participation in one settlement meeting with each of the parties. He argues that for Justice Ramos to retain the case, he would therefore be in violation of Rules Governing Judicial Conduct (22 NYCRR) § 100.3 (B) (4). That section provides: "[a] judge shall perform judicial duties without bias or prejudice against or in favor of any person." Grasso also relies upon 22 NYCRR 100.3 (E) (1), which states:

"[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where:

"(a) (i) the judge has a personal bias or prejudice concerning a party."

There is nothing in the record indicating that Justice Ramos could not be impartial in this matter, or that he had a "personal bias or prejudice" towards any of the parties. Initially, the parties all agreed that neither the 2002 nor the 2003 letter sent by the executive search firm was a basis for recusal. Both were submitted well before this action was commenced and assigned to Justice Ramos (*cf. Pepsico, Inc. v McMillen*, 764 F2d 458, 461 [1985] [recusal required where judge, during trial, was in negotiation "albeit preliminary, tentative, indirect, unintentional and ultimately unsuccessful" for a future position at the two law firms appearing before him]). Further, nothing in the record indicates that the NYSE's prior failure to offer Justice Ramos a position biased, prejudiced, or predisposed the Judge to reach any particular conclusion in this litigation.

The settlement conferences that the court held with each of the parties are similarly not a valid basis for recusal. Rules Governing Judicial Conduct (22 NYCRR) § 100.3 (B) (7) states that "[a] judge shall dispose of all judicial matters promptly, efficiently and fairly," and the commentary to this section provides, as relevant, "[a] judge should encourage and seek to facilitate settlement [without coercion] . . . In matters that will be tried without a jury, a judge who seeks to facilitate settlement should exercise extreme care to avoid prejudging or giving the appearance of prejudging the case." (Code of Judicial Conduct Canon 3, Commentary [3.13] [3B(7)].) Thus participation in settlement conferences is encouraged, even in cases

which may involve a bench trial. Justice Ramos attempted to settle this case, but he met with the parties only once. He related that nothing of substance or sensitivity was revealed in Grasso's settlement conference, and that he was aware that Grasso had strong resistance to any form of compromise. In his order denying recusal, Justice Ramos stated that he did not fault Grasso for his feelings about the claims asserted against him, and that given these beliefs, he appropriately ended any attempts to facilitate a settlement. In the circumstances, the court's decision to continue to preside over the case also constituted a proper exercise of its broad discretion to determine whether recusal was warranted. Concur—Mazzarelli, J.P., Saxe, Buckley and McGuire, JJ. [*See* 13 Misc 3d 1214(A), 2006 NY Slip Op 51823(U).]